IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CESAR ROCHA and RALPH JETER, | : | CIVIL ACTION |
| Individually, and on Behalf of All Others | : | |
| Similarly Situated | : | |
| | : | |
| v. | : | |
| | : | |
| GATEWAY FUNDING DIVERSIFIED | : | |
| MORTGAGE SERVICES, L.P. | : | NO. 15-482 |

## MEMORANDUM

**Padova, J.**                                                                                                **June 1, 2016**

Plaintiffs Cesar Rocha and Ralph Jeter have brought this matter as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and as a class action pursuant to New Jersey law. They contend that their former employer, Defendant Gateway Funding Diversified Mortgage Services, L.P. ("Gateway"), misclassified them as exempt from the minimum wage and overtime requirements of the FLSA and New Jersey law and failed to pay them required minimum and overtime wages. Before the Court is Plaintiffs' "Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b)," in which Plaintiffs seek conditional certification of this case as a collective action under the FLSA and ask that notice of this action be sent to similarly situated persons. For the following reasons, we grant the Motion.

## I.      FACTUAL BACKGROUND

Gateway is a mortgage lender with more than 50 branch offices, which markets home loans to residential customers across the country through nearly 500 loan officers. (Reich Decl. ¶ 3.) Rocha was employed by Gateway as loan officer in American Forks, Utah from February 2012 to September 2012. (Rocha Decl. ¶¶ 2-3.) He maintains that he was an inside-sales loan

officer and that his primary job responsibility was to sell home loans to borrowers by telephone from inside Gateway's office.[1]  (Id. ¶¶ 2, 5.)  He reports that he routinely worked more than 40 hours per week, sometimes as many as 50-60 hours per week, and, after his first three months of employment, was not paid minimum or overtime wages by Gateway.  (Id. ¶¶ 6-8.)  Gateway's employment records for Rocha state that he was paid $3000.00 per month for his first 90 days of employment and was paid solely by commission thereafter.  (Sandstrom Decl. Ex. 2 at FOA 00162.)

Jeter was employed by Gateway as a loan officer in Brigantine, New Jersey from April 2012 to May 2014.  (Jeter Decl. ¶¶ 2-3.)  He asserts that he was employed as an inside-sales loan officer and that his primary job responsibility was to sell home loans to customers on the phone from inside Gateway's office.  (Id. ¶¶ 2, 5.)  He contends that he regularly worked more than 40 hours per week and often worked 50-60 hours per week, and he was not paid minimum or overtime wages by Gateway.  (Id. ¶¶ 6-8.)  Gateway's records show that it classified Jeter as exempt from federal wage and hour requirements, meaning that he was considered to be ineligible for overtime pay for hours worked in excess of 40 in one week.  (Sandstrom Decl. Ex. 10 at FOA 00061.)  He was paid on a commission only basis.  (Jeter Decl. ¶ 6.)

The Complaint alleges the following.  All of Gateway's inside sales loan officers employed during the relevant period had the primary duty of selling residential mortgage loans from inside Gateway's offices.  (Compl. ¶ 8.)   During the relevant time period, Gateway unilaterally dictated and controlled the terms of employment of Plaintiffs and the potential members of the collective, including the nature of their work, their wages, their classification as

---

[1]Gateway has taken the position that Rocha's primary duty was outside sales.  (See Reich Decl. ¶ 5; Sandstrom Decl. Ex. 2 at FOA 00162.)  However, we may not evaluate the merits of Plaintiffs' claims at this stage of the litigation.  See Titchenell v. Apria Healthcare Inc., Civ. A. No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012).

exempt employees, their productivity requirements, and how their hours were tracked.  (Id. ¶¶ 10-11.)  Pursuant to its policies, Gateway knowingly permitted Plaintiffs and prospective members of the collective to arrive early for work, work late, and work on weekends so that they regularly worked more than 40 hours per week.  (Id. ¶ 12.)  Gateway did not require Plaintiffs and prospective members of the collective to maintain accurate, contemporaneous records of their work hours.  (Id. ¶ 13.)  Pursuant to Gateway's policies, Plaintiffs and the prospective members of the collective did not receive a weekly guaranteed salary of at least $455 (the federal minimum wage for a 40 hour workweek), but were paid on a commission basis, so that they worked hours for which they did not receive the minimum wage.  (Id. ¶¶ 14-15.)  Plaintiffs and the prospective members of the collective also did not receive overtime pay for hours worked in excess of 40 hours of work per week.  (Id.)

Plaintiffs seek to prosecute this matter as a collective action pursuant to 29 U.S.C. § 216(b) [2] on behalf of the following FLSA Collective:

> All People who worked as inside sales Loan Officers for Defendant, its subsidiaries, or affiliated companies at any time during the maximum limitations period who worked more than 40 hours in any week without receiving all overtime compensation required by federal law or wages over the required minimum level for every hour worked.

(Id. ¶ 17.)  Plaintiffs maintain that they are members of the FLSA Collective defined above.  (Id. ¶ 18.)

---

[2] 29 U.S.C. § 216(b) provides that:
Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
29 U.S.C. § 216(b).

The Complaint asserts two claims pursuant to the FLSA and two claims pursuant to New Jersey law.  Count I asserts a claim on behalf of the FLSA Collective for failure to pay required minimum wages in violation of 29 U.S.C. § 206(a)(1)(C).  (Id. ¶¶ 35-42.)  Count II asserts a claim on behalf of the FLSA Collective for failure to pay required overtime wages in violation of 29 U.S.C. § 207(a)(1).  (Id. ¶¶ 44-50.)  Count III asserts a claim on behalf of Plaintiff Jeter and a sub-class of individuals who were employed as inside sales Loan Officers for Gateway in the state of New Jersey at any time during the maximum limitations period (the "New Jersey Sub-Class") for failure to pay minimum and overtime wages in violation of N.J. Stat. Ann. 34:11-56(a)(4) and N.J. Admin. Code § 12:56-6.1.  (Id. ¶¶52-66.)   Count IV asserts a claim on behalf of Plaintiff Jeter and the New Jersey Sub-Class for failure to pay for all hours worked in violation of N.J. Admin. Code § 12:56-5.1.  (Id. ¶¶ 52-81.)  Plaintiffs have not yet moved for certification of the New Jersey Sub-Class.

## II.   LEGAL STANDARD

Plaintiffs have moved for conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) and ask that we authorize the service of their proposed Notice "to a seventeen-state putative collective defined to include all persons Gateway . . . employed as a commission-only Loan Officer during any workweek in the last three  years."  (Pl. Mem. at 1.)

"Collective actions brought under the FLSA are governed by § 216(b), which provides for an opt-in procedure for plaintiffs desiring to be included in the litigation."  Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 87 (E.D. Pa. 2015) (citing 29 U.S.C. § 216(b)).   "There are two requirements for potential plaintiffs to be included in the collective action:  plaintiffs must (1) be 'similarly situated' and (2) give written consent."  Id. (quoting 29 U.S.C. § 216(b)).   "However, the 'similarly situated' standard for employees to proceed

collectively under the FLSA is not defined by the statute." Id. at 88 (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011), reversed on other grounds Genesis Health Care Corp. v. Symczyk, 133 S. Ct. 1523 (2013)). "The FLSA also does not provide specific procedures by which potential plaintiffs may opt in, but the Supreme Court has held that 'district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs.'" Id. (alterations in original) (quoting Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

The United States Court of Appeals for the Third Circuit has adopted a two-step approach for certification of collective actions pursuant to 29 U.S.C. § 216(b). Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535-36 (3d Cir. 2012). "During the initial phase, which is conducted early in the litigation process when the court has minimal evidence, 'the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 192). "'[I]f the plaintiff carries [his] burden at this threshold stage, the court will conditionally certify the collective action for the purposes of notice and pretrial discovery.'" Id. (alterations in original) (quoting Symczyk, 656 F.3d at 192). However, "'conditional certification' is not really a certification. It is actually 'the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA.'" Zavala, 691 F.3d at 536 (first and third alterations in original) (quoting Symczyk, 656 F.3d at 194). "After discovery, and with the benefit of a much thicker record than it had at the notice stage, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the

named plaintiff." Symczyk, 656 F.3d at 193 (internal quotation omitted).  "If the plaintiff carries his heavier burden during the second phase 'the case may proceed to trial as a collective action.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 193).

The Third Circuit has instructed district courts to apply "a 'fairly lenient 'standard' . . . for conditional certification" at the first step.  Zavala, 691 F.3d at 535 (quoting Zavala v. Wal–Mart Stores, Inc., Civ. A. No. 03–5309, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010)).[3] Thus, at the first step, the "[p]laintiff must make 'a modest factual showing that the similarly situated requirement is satisfied.'" Titchenell v. Apria Healthcare Inc., Civ. A. No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012) (quoting Bosley v. Chubb Corp., Civ. A. No. 04–4598, 2005 WL 1334565, at *3 (E.D. Pa. June 3, 2005)).  "Without evaluating the merits of plaintiff's case, the Court must determine 'whether plaintiff's proposed class consists of similarly situated employees who were collectively the victims of a single decision, policy, or plan.'"  Id. (quoting Lugo v. Farmer's Pride Inc., Civ. A. No. 07–749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008)).  Thus, "[u]nder this standard, 'a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees.'"  Harrison, 305 F.R.D. at 88 (second alteration in original) (quoting Symczyk, 656 F.3d at 193); see also Drummond v. Herr Foods Inc., Civ. A. No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015) (same). "However, this remains a lenient burden."  Harrison, 305 F.R.D. at 88 (citing Smith v. Sovereign Bancorp Inc., Civ. A. No. 03–2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003); and

[3]District courts apply a "'stricter standard' . . . on final certification, in which the court actually determines whether the plaintiffs are similarly situated."  Zavala, 691 F.3d at 535-36 (citation omitted).

<u>Resch v. Krapf's Coaches, Inc.</u>, Civ. A. No. 11–6893, 2012 WL 2500623, at *2 (E.D. Pa. June 29, 2012)).

## III.   DISCUSSION

As noted above, Plaintiffs move to conditionally certify this case as a FLSA collective action and seek to establish that Gateway incorrectly classified Plaintiffs and the potential members of the FLSA Collective as exempt from the FLSA's minimum wage and overtime requirements in order to avoid paying them federally required minimum and overtime wages. The FLSA requires employers to pay employees no less than the federally mandated minimum wage for all hours worked up to and including 40 hours per week, and also requires employers to pay time and one-half for all hours worked over 40 in a given workweek.  <u>See</u> 29 U.S.C. §§ 206, 207.   The current federally mandated minimum wage is $7.25 per hour.   29 U.S.C. § 206(a)(1)(C).   An employer must pay employees for all of the hours they were permitted to work, even if the employer did not require or request the employee to work all of those hours. <u>See</u> 29 C.F.R. § 785.11 (stating that "[w]ork not requested but suffered or permitted is work time").  This rule applies to "work performed away from the premises or the job site, or even at home.  If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."   29 C.F.R. § 785.12.   However, the FLSA "provides an exemption from the Act's minimum wage and overtime requirements for any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of an outside sales employee."   29 C.F.R. § 541.0; <u>see also</u> 29 U.S.C. § 213(a) (exempting individuals employed as outside salesmen from the minimum wage and overtime requirements of 29 U.S.C. §§ 206 and 207).  The term "outside salesman" means the following as it is used in the FLSA:

> any employee:  (1) Whose primary duty is:  (i) making sales within the meaning
> of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for
> the use of facilities for which a consideration will be paid by the client or
> customer; and (2) Who is customarily and regularly engaged away from the
> employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).  The regulations further explain that, when we consider whether an

employee is "engaged away from the employer's place or places of business" a salesperson's

home office "is considered one of the employer's places of business, even though the employer

is not in any formal sense the owner or tenant of the property."  29 C.F.R. § 541.502.

     A.    <u>The Record Evidence</u>

Plaintiffs maintain that they have satisfied the requirement for conditional certification of

making a modest factual showing that:  (1)  they are similarly situated to the potential opt-in

plaintiffs and (2) they were all the victims of a single companywide policy that resulted in their

not being paid federally required minimum and overtime wages.  In support of their position,

Plaintiffs have submitted their own Declarations, and the Declarations of five individuals who

opted-in to this litigation by filing Plaintiff Consent Forms:  Paul Wilson, Allen Conine, Robert

Ventola, Lillian Kelley, and Vic Osmond (referred to herein as the "opt-in plaintiffs").  (Pls.'

Exs. B-H.)

Gateway has more than 50 branch offices across the country.  (Reich Decl. ¶ 3.)  Rocha,

Jeter and the opt-in plaintiffs all worked for Gateway as loan officers within three years prior to

the filing of the Complaint or the filing of their Consent Forms opting-in to this action.  (<u>See</u>

Rocha Decl. ¶ 2; Jeter Decl. ¶ 2; Wilson Decl. ¶ 2; Conine Decl. ¶ 2; Ventola Decl. ¶ 2; Kelley

Decl. ¶ 2; Osmond Decl. ¶ 2.)  Rocha, Wilson, and Osmond worked in Gateway's branch offices

located in American Forks, Utah.  (Rocha Decl. ¶ 3; Wilson Decl. ¶ 3; Osmond Decl. ¶ 3.)  Jeter

and Conine worked in Gateway's branch office in Brigantine, New Jersey; Conine also worked

8

in his home office in Southampton, New Jersey.  (Jeter Decl. ¶ 3; Conine Decl. ¶ 3.)  Ventola worked in Gateway's branch offices in Audubon, New Jersey.  (Ventola Decl. ¶ 3.)  Kelley worked in Gateway's branch office in Rochester, New York and her home office in Webster, New York.  (Kelley Decl. ¶ 3.)  They all had the same primary duty:  to sell home loans by telephone or in person from Gateway's office or from a home office.  (Rocha Decl. ¶¶ 4-5; Jeter Decl. ¶¶ 4-5; Wilson Decl. ¶¶ 4-5; Conine Decl. ¶¶ 4-5; Ventola Decl. ¶¶ 4-5; Kelley Decl. ¶¶ 4-5; Osmond Decl. ¶¶ 4-5.)

Jeter, Conine, and Kelley were paid on a commission only basis during the entire course of their employment with Gateway.  (Jeter Decl. ¶ 6; Conine Decl. ¶ 6; Kelley Decl. ¶ 6.)  Rocha was paid at a rate of $3000.00 per month for his first 90 days of employment with Gateway; thereafter he was paid on a commission only basis.  (Sandstrom Decl. Ex. 2 at FOA 00162; Rocha Decl. ¶ 6.)  Osmond was paid a forgivable draw of $6500.00 per month for his first 90 days of employment with Gateway and was paid on a commission only basis thereafter.  (Sandstrom Decl. Ex. 6 at FOA 00102; Id. Ex. 10 at FOA 00100; Osmond Decl. ¶ 6.)  Ventola was paid a minimum draw of $10,000.00 per month for his first six months of employment with Gateway, after which he was paid on a commission only basis.  (Sandstrom Decl. Ex. 8 at FOA 00187; Id. Ex. 10 at FOA 00185; Ventola Decl. ¶ 6.)  Wilson was paid a forgivable draw of $6500.00 per month for his first 90 days of employment with Gateway and was paid on a commission only basis thereafter.  (Sandstrom Decl. Ex. 9 at FOA 00165; Id. Ex. 10 at FOA 00163; Wilson Decl. ¶ 6.)  When the Plaintiffs and opt-in plaintiffs were being paid on a commission only basis, they were paid only when they sold a home loan; thus, if they did not sell a home loan during a pay period, they were not paid anything, even minimum wage.  (Rocha Decl. ¶ 6; Jeter Decl. ¶ 6; Wilson Decl. ¶ 6; Conine Decl. ¶ 6; Ventola Decl. ¶ 6; Kelley Decl. ¶

6; Osmond Decl. ¶ 6.)  There were months in which Rocha, Jeter, Wilson, Conine, and Kelley performed work for Gateway but received no pay whatsoever because they did not close any home loans.  (Rocha Dep. ¶ 6; Jeter Decl. ¶ 6; Wilson Decl. ¶ 6; Conine Decl. 6; Kelley Decl. ¶ 6.)  Ventola and Osmond also went for weeks without being paid anything by Gateway because they had not closed any loans.  (Ventola Decl. ¶ 6; Osmond Decl. ¶ 6.)

Rocha, Jeter, Wilson, Conine, Kelley, and Osmond also report that they regularly worked more than 40 hours per week, sometimes more than 50 hours per week, but Gateway did not pay them overtime wages for the hours they worked in excess of 40 hours per week.  (Rocha Decl. ¶¶ 7-8; Jeter Decl. ¶¶ 7-8; Wilson Decl. ¶¶ 7-8; Conine Decl. ¶¶ 7-8; Ventola Decl. ¶¶ 7-8; Kelley Decl. ¶¶ 7-8; Osmond Decl. ¶¶ 7-8.)  Plaintiffs have also submitted evidence that Gateway failed to pay required overtime wages to other loan officers it employed in American Forks, Utah and Brigantine, New Jersey.  Rocha, Wilson, Conine, and Osmond state in their Declarations that, when they were employed by Gateway, they worked with other loan officers who they observed on a daily basis and who, like them, "sold loans as their primary duty."  (Rocha Decl. ¶ 9; Wilson Decl. ¶ 9; Conine Decl. ¶ 9; Osmond Decl. ¶ 9.)  Rocha, Wilson, Conine, and Osmond personally observed that these other loan officers "regularly worked in excess of 40 hours per week."  (Rocha Decl. ¶ 9; Wilson Decl. ¶ 9; Conine Decl. ¶ 9; Osmond Decl. ¶ 9.)  They believe that these other loan officers "were not paid overtime" because they were "told by Gateway that all of its loan officers were paid in the same" manner and because they "learned from other loan officers that all of Gateway's loan officers were paid the same way."  (Rocha Decl. ¶ 9; Wilson Decl. ¶ 9; Conine Decl. ¶ 9; Osmond Decl. ¶ 9.)

Gateway opposes conditional certification of the putative FLSA Collective on four grounds.  It maintains that:  (1) Plaintiffs have failed to identify a company-wide policy or

practice that is actually unlawful; (2) Plaintiffs have failed to establish that that such policy or practice applies to all of Gateway's loan officers nationwide; (3) Plaintiff's claims would require individualized determinations that may not be adjudicated efficiently through a collective action; and (4) Plaintiffs are bound by a decision declining to conditionally certify a FLSA collective in a similar case in another court.

      B.     <u>Unlawful Policy or Practice</u>

Gateway argues that Plaintiffs have not satisfied the requirements for conditional certification of a FLSA collective action because they have not made a showing that Gateway's policy or practice of classifying its loan officers as exempt from the federal minimum and overtime wage requirements is unlawful. As we discussed above, the FLSA exempts individuals who are employed in the capacity of outside salesmen from its minimum and overtime wage requirements. <u>See</u> 29 U.S.C. § 213(a)(1) (exempting individuals employed as outside salesmen from the minimum wage and overtime requirements of 29 C.F.R. §§ 206 and 207). Outside salesmen are defined as employees "[w]hose primary duty is . . . making sales . . . and . . . [w]ho [are] customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). Gateway maintains that it properly classified Plaintiffs, the opt-in plaintiffs, and the potential members of the FLSA Collective as exempt from the FLSA's minimum and overtime wage requirements. Gateway relies on United States Department of Labor Opinion Letter FLSA2006-11, which discusses whether individuals employed as mortgage loan officers who worked primarily outside their employers' offices met the requirements for the outside sales exemption from the FLSA's minimum and overtime wage requirements. <u>See</u> U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2006-11, 2006

WL 1094597 (Mar. 31, 2006).[4]   The Department of Labor opined in Letter FLSA2006-11 that

loan officers satisfy the first requirement of § 541.500, i.e., that their primary duty is making

sales within the meaning of section 3(k) of the Act, if their primary duty is selling mortgage loan

packages and they are compensated through the payment of a portion of the "'interest paid for

the amount loaned.'"  Id. at *3 (quoting Field Operations Handbook ("FOH") § 22e02).

The Department of Labor further opined in Letter FLSA2006-11 that whether loan

officers were "'customarily and regularly engaged away from the employer's place of business'"

would "depend[] on the extent to which they engage in sales or solicitations, or related activities,

outside of the employer's place or places of business."  FLSA2006-11, 2006 WL 1094597, at *3

(internal quotation marks omitted).  The Labor Department explained that loan officers could

"fulfill the 'outside' requirement of the outside sales exemption" "[b]y meeting clients outside of

the employer's place of business in order to initiate sales."  Id.  The Department of Labor further

stated in FLSA2006-11, that the "qualifying exempt outside sales activities must 'normally and

recurrently [be] performed every workweek; it does not include isolated or one-time tasks.'"  Id.

(alteration in original) (quoting 29 C.F.R. § 541.701).  Consequently, "loan officers who do not

engage in outside sales activity as a normal and recurrent part of their workweek fail to meet the

---

[4]The Supreme Court has instructed that the Department of Labor's opinion letters are not entitled to "Chevron-style deference."  Christensen v. Harris County, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference." (citations omitted)).  "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under [the Supreme Court's] decision in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have to 'power to persuade.'"  Id. (citation omitted).  The Third Circuit has explained that, "[u]nder Skidmore, we defer to the Secretary's opinion letter based on 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 427-28 (3d Cir. 2013) (quoting Skidmore, 323 U.S. at 140).

exemption's requirements."  Id.  The Department of Labor further opined that loan officers may qualify for the outside sales exemption even if "they . . . perform some activities at their employer's place of business, so long as the inside sales activity is incidental to and in conjunction with qualifying outside sales activity."  Id. at *4 (citing Olivo v. GMAC Mortg. Co., 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004)).  Thus, "[a]ctivities such as making phone calls, sending e-mails, and meeting with clients in the office are considered exempt if performed incidental to or in conjunction with the 'sales force' loan officer's own outside sales activities." Id. (citing 29 C.F.R. § 541.503; FOH § 22e02).

Steven Reich, who has been Senior Vice President of Production and Branch Support for Finance for Gateway from October 2006, has submitted a Declaration describing Gateway's employment of loan officers.  (Reich Decl. ¶ 1.)  He states that Gateway employs three classes of loan officers:  Mortgage Originators, Inside Sales Representatives, and Retail Branch Managers. (Id. ¶ 2.)  Gateway generally classifies its Mortgage Originators "as exempt employees under the FLSA because they are primarily responsible for 'outside sales,' including . . . contacting prospective clients outside of Gateway's offices, developing and maintaining outside referral sources . . . making outside sales and marketing presentations, and meeting with actual and prospective customers and referral sources outside of the office."  (Id. ¶ 4.)   Gateway permits its Mortgage Originators to perform the following functions inside its branch offices:  "contacting prospective customers to arrange outside meetings, contacting actual or prospective clients previously solicited through outside sales work, processing loan information relating to outside sales into Gateway's computer systems, and preparing loan paperwork relating to outside sales." (Id. ¶ 6.)  Reich acknowledges, in his Declaration, that Gateway does not keep track of the hours worked by Mortgage Originators, does not know when Mortgage Originators were working

outside of its branch offices, and does not require its Mortgage Originators to report their hours to Gateway.  (Id. ¶ 5.)  Gateway typically pays its Mortgage Originators "by commission based on their mortgage sales," although Gateway paid many of them "some form of guaranteed compensation" when they were first hired, "such as a forgivable draw."  (Id. ¶ 7.)  Unlike Mortgage Originators, Gateway does not classify its Inside Sales Representatives as exempt and pays this class of loan officer a minimum hourly wage and overtime for any hours worked over 40 hours in one week.  (Id. ¶ 8.)

Plaintiffs maintain, however, that Gateway's policy and practice of classifying them as exempt was unlawful because they were actually employed by Gateway as inside-sales loan officers.  The record contains Gateway's Employee New Hire Forms and Gateway's job offer letters for the Plaintiffs and the opt-in plaintiffs.  The Employee New Hire Forms and the job offer letters that Gateway has supplied for Jeter and Conine do not show that Jeter and Conine were hired as Mortgage Originators; rather, these documents demonstrate that Gateway hired Jeter and Conine as "Loan Officers."  (Sandstrom Ex. 1 at FOA 00064; Ex. 3 at FOA 00003; Ex. 10 at FOA 00001-2, FOA 00061-2.)  Consequently, Reich's descriptions of the job responsibilities and work locations of Mortgage Originators do not appear to apply to either Jeter or Conine.  The only other evidence of record regarding the jobs held by Jeter and Conine is the information provided in their Declarations.  Both Jeter and Conine state in their Declarations that they worked for Gateway as inside sales loan officers and that they performed their primary duty, selling home loans by telephone, from Gateway's offices.[5]  (Jeter Decl. ¶¶ 2, 5; Conine Decl. ¶¶

---

[5]Conine states that his "primary duty as a loan officer was to sell home loans to prospective customers on the telephone from either Gateway's office or [his] home office." (Conine Decl. ¶ 5.)   As we noted earlier, the Department of Labor considers a salesperson's home office "one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."  29 C.F.R. § 541.502.

2, 5.)  We thus conclude that there is evidence on the record of this Motion that Gateway failed to pay federally required minimum and overtime wages to both Jeter and Conine even though they were not employed by Gateway "in the capacity of an outside sales employee."  See 29 C.F.R. § 541.0.  We further conclude, accordingly, that Plaintiffs have satisfied their burden of "making a modest factual showing" that Jeter and Conine were the victims of a policy that resulted in their unlawfully working without being paid federally required minimum and overtime wages.

The record also includes Gateway's New Hire Forms and job offer letters for Rocha and for opt-in plaintiffs Kelley, Osmond, Ventola, and Wilson.  (Sandstrom Decl. Ex. 2 at FOA 00162, Ex. 5 at FOA 00068; Ex. 6 at FOA 00102; Ex. 8 at FOA 00187; Ex. 9 at FOA  0165.) Those documents show that Rocha, Kelley, Osmond, Ventola, and Wilson were all hired by Gateway as Mortgage Originators.  (See id.)  Consequently, we have examined whether there is any evidence on the record that would support Plaintiffs' position that they and the potential members of the FLSA Collective were improperly designated as exempt by Gateway even though, as Mortgage Originators, they were hired to be "primarily responsible for 'outside sales.'"  (Reich Decl. ¶ 4.)  There is evidence that the primary job duty of Rocha, Kelley, Osmond, Ventola and Wilson was selling home loans and that they performed this job function by telephone or in person from Gateway's office or from a home office.  (Rocha Decl. ¶¶ 4-5; Kelley Decl. ¶¶ 4-5; Osmond Decl. ¶¶ 4-5; Ventola Decl. ¶¶ 4-5; Wilson Decl. ¶¶ 4-5.)  Rocha, Wilson, Ventola, Kelley and Osmond do not describe any of their other work activities in their Declarations and there is no other evidence of record that these individuals personally performed any other tasks.  Moreover, while there is evidence that Gateway anticipated that its Mortgage Originators would perform sales activities such as contacting prospective clients, developing

referral sources, making presentations, and meeting with actual clients outside of Gateway's offices, there is presently no evidence that Rocha, Wilson, Ventola, Kelley and Osmond, or any other Mortgage Originator employed by Gateway actually did so.  (Reich Decl. ¶¶ 4, 6.)  Indeed, Reich states in his Declaration that "Gateway has no way of knowing when exempt Mortgage Originators are performing their outside sales work because . . . [they] are not directly supervised or directed on how or when to perform their outside sales work."  (Id. ¶ 5.)

We conclude that there is evidence on the record of this Motion that Rocha, Wilson, Ventola, Kelley and Osmond, who were hired by Gateway as Mortgage Originators, were not outside salespeople as that term is defined 29 C.F.R. § 541.500 and Opinion Letter FLSA2006-11 and, consequently, that they were not properly classified as exempt from federal minimum and overtime wage requirements.  We further conclude, accordingly, that Plaintiffs have made a modest factual showing that Gateway had a common, unlawful practice of failing to pay required minimum and overtime wages to its loan officers and of misclassifying those loan officers as exempt in order to unlawfully avoid paying them required minimum and overtime wages.  See Titchenell, 2012 WL 3731341, at *3 (stating that plaintiffs must "make 'a modest factual showing' that the similarly situated requirement is satisfied'" (quoting Bosley, 2005 WL 1334565, at *3)).  Plaintiffs have therefore met their burden, at this first stage of conditional certification, of demonstrating that their "proposed class consists of similarly situated employees who were collectively the victims of a single [unlawful practice]."  Id. (internal quotation omitted).

C.     Nationwide Collective Certification

Gateway argues that this matter should not be conditionally certified as a national collective action, because Plaintiffs have not made a "modest factual showing" that all of its loan

officers across the country are similarly situated. Gateway admits that it generally classifies its Mortgage Originators as exempt. (Reich Decl. ¶ 4.) However, it contends that "'the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.'" Jenkins v. TJX Cos. Inc., 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) (quoting Vasquez v. Vitamin Shoppe Indus., Inc., No. 10-CV-8820, 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011)). Thus, we must determine whether the record contains evidence that Plaintiffs are similarly situated to putative class members nationwide.

Gateway has 50 branch offices across the country (Reich Decl. ¶ 3), and Plaintiffs have submitted Declarations from individuals who worked for Gateway in three of those states. Rocha, Wilson and Osmond worked in Utah. (Rocha Decl. ¶ 3; Wilson Decl. ¶ 3; Osmond Decl. ¶ 3.) Jeter, Conine, and Ventola worked in New Jersey. (Jeter Decl. ¶ 3; Conine Decl. ¶ 3; Ventola Decl. ¶ 3.) Kelley worked in New York. (Kelley Decl. ¶ 3.) All of these individuals stated in their Declarations that their primary job duty was to sell home loans by telephone or in person from Gateway's office or from a home office. (Rocha Decl. ¶¶ 4-5; Jeter Decl. ¶¶ 4-5; Wilson Decl. ¶¶ 4-5; Conine Decl. ¶¶ 4-5; Ventola Decl. ¶¶ 4-5; Kelley Decl. ¶¶ 4-5; Osmond Decl. ¶¶ 4-5.) They also stated that Gateway did not always pay them federally required minimum wages and never paid them federally required overtime wages. (Rocha Decl. ¶¶ 6-8; Jeter Decl. ¶¶ 6-8; Wilson Decl. ¶¶ 6-8; Conine Decl. ¶¶ 6-8; Ventola Decl. ¶¶ 6-8; Kelley Decl. ¶¶ 6-8; Osmond Decl. ¶¶ 6-8.) Moreover, Rocha, Wilson, Conine, and Osmond observed other loan officers working in their offices in American Forks, Utah and Brigantine, New Jersey who also "sold loans as their primary duty, regularly worked in excess of 40 hours per week, and

were not paid overtime." (Rocha Decl. ¶ 9; Wilson Decl. ¶ 9; Conine Decl. ¶ 9; Osmond Decl. ¶ 9.) We find that Plaintiffs have submitted evidence based on their own experiences and observations, and the experiences and observations of the opt-in plaintiffs, that Gateway has unlawfully failed to pay federally required overtime wages to loan officers in three of states in which it operates.

In addition, Rocha, Wilson, Conine and Osmond all also report that they have been "told by Gateway that all of its loan officers were paid in the same" manner and all have "learned from other loan officers that all of Gateway's loan officers were paid the same way." (Rocha Decl. ¶ 9; Wilson Decl. ¶ 9; Conine Decl. ¶ 9; Osmond Decl. ¶ 9.) Furthermore, Reich stated in his Declaration that Gateway's Mortgage Originators have the same primary job responsibilities and are generally classified as exempt. (Reich Decl. ¶ 4.) We find, accordingly, that there is evidence on the record that Gateway has misclassified as exempt and failed to pay federally required minimum and overtime wages to loan officers employed in more than the three states thus far represented in this action and possibly in all of its offices nationwide.

"Given the FLSA's broad remedial purpose," Plaintiffs need not adduce evidence from employees located in every state in which Gateway operates to satisfy their burden of proof for certification of a nationwide collective action. Bradford v. Logan's Roadhouse, Inc., -- F. Supp. 3d --, 2015 WL 5794545, at *10 (M.D. Tenn. 2015) (conditionally certifying a FLSA nationwide collective action in all states in which the defendant operates even though the plaintiffs did not present evidence from employees who worked in every state). Consequently, while the evidence of record is not compelling as to the geographic breadth of Defendant's alleged violations of the FLSA, we conclude that it satisfies Plaintiffs' burden, at this "lenient first step of conditional certification," to make a "'modest factual showing' that there are similarly situated persons who

may desire to opt into the litigation" who worked in Gateway's offices nationwide.  Garcia v.
Nunn, Civ. A. No. 13-6316, 2016 WL 1169560, at *3-4 (E.D. Pa. Mar. 25, 2016) (conditionally
certifying nationwide FLSA collective based on Plaintiff's declaration describing conditions in
five states).  See also Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268, 272-74, 276 (N.D. Cal.
2015) (conditionally certifying nationwide FLSA collective action based on the declarations of
two of defendant's Executive Chefs employed in California and job descriptions prepared by the
employer showing that the employer classified all of its Executive Chefs as non-exempt (except
those employed in California after 2014), that all of the Executive Chefs had the same job
responsibilities and were expected to work 50 hours per week, and that the employer did not pay
the Executive Chefs overtime (except for those employed in California after 2014)); Costello v.
Kohl's Illinois, Inc., Civ. A. No. 13-1359, 2014 WL 4377931, at *5-7 (S.D.N.Y. Sept. 4, 2014)
(conditionally certifying nationwide FLSA collective action based on documents from defendant
showing that it expected its exempt employees to perform some non-exempt work, together with
the deposition testimony of four plaintiffs located in different states who, while classified as
exempt, had engaged primarily in non-exempt work and had observed similarly classified
employees also engaged primarily in non-exempt work); Devries v. Morgan Stanley & Co.
LLC., Civ. A. No. 12-81223, 2014 WL 505157, at *2, *4-6 (S.D. Fla. Feb. 7, 2014)
(conditionally certifying nationwide FLSA collective action based on evidence that employer
had uniform nationwide policy with respect to its employees' job duties and deposition
testimony of employees located in four states that they were not paid for overtime hours they
worked); Titchenell, 2011 WL 5428559, at *1, *4-6 (conditionally certifying a nationwide FLSA
collective action based on plaintiff's deposition testimony that her boss was aware that she was
continuing to work after she clocked out; her performance evaluations in which her boss stated

that she worked unapproved overtime; plaintiff's testimony that she had observed other employees working after they had clocked out; and affidavits from two employees who worked for the defendant in two other states who also described working after they clocked out).[6]

### D.    Individual Facts and Circumstances

Gateway argues that the instant Motion should be denied because Plaintiff's claims cannot be efficiently resolved through a collective proceeding.  See Purdham v. Fairfax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 549 (E.D. Va. 2009) (denying motion for conditional certification of a FLSA collective action "because of the probable necessity of an individualized FLSA coverage determination for each member of the potential class").  Gateway argues that if

---

[6]Gateway also argues that, if we conditionally certify this case as a collective action, the collective should be limited to its employees in the branch offices in New Jersey where Jeter and Ventola worked because they are the only two Plaintiffs who brought their claims within the FLSA's two-year statute of limitations.  The FLSA provides that actions brought for unpaid minimum wages, unpaid overtime wages, or liquidated damages must be brought "within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Gateway maintains that the two year statute of limitations applies to their claims because Plaintiffs have not supplied any evidence that Gateway's misclassification of them as exempt employees was willful.  See Pignataro v. Port Auth., 593 F.3d 265, 273 (3d Cir. 2010) ("To establish that the [defendant's] violation of the FLSA was willful, [plaintiffs] must prove that the [defendant] knew it was violating the FLSA or acted in reckless disregard of whether it was violating the FLSA." (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 135 (1988))).

It would, however, be premature to decide whether Gateway has acted willfully before the parties have engaged in full discovery.  Whether Gateway acted willfully is an issue of fact that should be decided by the factfinder at trial and we decline to limit the potential size of the collective based on the limited record now before us.  See Chung v. Wyndham Vacation Resorts, Inc., Civ. A. No. 14-490, 2014 WL 4437638, at *4 (M.D. Pa. Sept. 9, 2014) ("'Whether Defendant['s] violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants.  Facts regarding willfulness must be explored during discovery, and the [Defendant] may challenge the three-year statute of limitations at a later date.'" (alterations in original) (quoting Gallagher v. Lackawanna Cnty., Civ. A. No. 07-912, 2008 WL 9375549, *9 (M.D. Pa. May 30, 2008))); Mavrinac v. Emergency Med. Ass'n of Pittsburgh (EMAP), Civ. A. No. 04-1880, 2007 WL 2908007, at *9 (W.D. Pa. Oct. 2, 2007) ("Whether there has been a willful violation of the Fair Labor Standards Act . . . is a question of fact to be determined by the fact finder by examining the evidence at trial." (citing Cunningham v. Freedom Ford Sales, Inc., Civ. A. No. 06-205, 2007 WL 2404739, at *7 (W.D. Pa. Aug. 17, 2007))).

this case proceeds as a nationwide collective action, we will be required to conduct hundreds of mini-trials relating to whether each member of the collective was properly classified as exempt, how many hours that individual worked each week, and the amount of that individual's compensation.  See MacGregor v. Farmers Ins. Exch., Civ. A. No. 10-3088, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011) ("If individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be granted." (citations omitted)); Pelcynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364, 369 (D.S.C. 2012) (denying motion for first-stage conditional certification because of "the manageability problems of the collective action proposed by Plaintiffs" where "the heart of [the] case is a dispute of the amount of overtime hours worked, and . . . there is likely no record of the hours to make the appropriate findings with any ease.  Testimony from the parties would be required in order to determine the overtime hours worked for each individual plaintiff, and the likelihood of dispute would require individualized credibility assessments by the fact-finder.").

The evidence of record establishes that Gateway did not keep track of the hours worked by its Mortgage Originators and did not require its Mortgage Originators to keep track of their hours.  (See Reich Decl. ¶ 5; Rocha Decl. ¶ 10; Jeter Decl. ¶ 9.)  In addition, none of the Plaintiffs or opt-in Plaintiffs appears to have kept track of their hours.  (See 2/17/16 Hr'g Tr. at 15.)  The parties estimate that the putative collective could include as many as 500 individuals who were employed by Gateway during the relevant time period.  (Id. at 16; see also Reich Decl. ¶ 3.)  Consequently, we could ultimately be required to make some individualized determinations regarding whether Gateway improperly failed to pay federally required minimum and overtime wages to as many as 500 individuals.

21

However, Gateway's argument that individualized determinations will make this case unsuitable for a collective proceeding is "best left for the second stage of FLSA collective action certification." Drummond, 2015 WL 894329, at *4 (citing Burkhart-Deal v. Citifinancial, Inc., Civ. A. No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010). We note that the courts in this Circuit have recognized that "a defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process." See Burkhart-Deal, 2010 WL 457127, at *3 (citations omitted); see also Mott v. Driveline Retail Merch., Inc., 23 F. Supp. 3d 483, 490 (E.D. Pa. 2014) (stating that "defense that Plaintiff's claims are too individualized to be litigated collective[ly] is unavailing at this stage" because the "defense is 'relevant to [the] determination of a stage two decertification issue after discovery has closed'" (second alteration in original) (quoting Pereira v. Foot Locker, 261 F.R.D. 60, 66 (E.D. Pa. 2009))); Abercrombie v. Ridge, Civ. A. No. 09-468, 2009 WL 3668112, at *6 (W.D. Pa. Nov. 4, 2009) ("[I]n most cases, the question whether individualized inquiries would predominate should be resolved during stage two of the certification analysis, that is, when the factual record is more complete." (citing Bishop v. AT&T Corp., 256 F.R.D. 503, 509 n.7 (W.D. Pa. 2009))). As the Third Circuit has explained, at the second stage of the certification analysis, which takes place "[a]fter discovery, and with the benefit of 'a much thicker record than it had at the notice stage,'" the district court is required to make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193 (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008)). We conclude that the second stage of the certification analysis is thus the appropriate point for our consideration of whether "individual issues would overwhelm common

ones, making a collective action inappropriate." Jarosz v. St. Mary Medical Ctr., Civ. A. No. 10-3330, 2014 WL 4722614, at *8 (E.D. Pa. Sept. 22, 2014) (granting motion to decertify conditionally certified collective action); see also Harrison v. Delguerico's Wrecking & Salvage, Inc., Civ. A. No. 13-5353, 2016 WL 826824, at *6 (E.D. Pa. Mar. 2, 2016) (decertifying collective action at the second stage of the certification analysis because the necessity of making "employee-by-employee inquiries into whether each Plaintiff is exempt further differentiates the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action"). Consequently, we will consider Gateway's argument with respect to the predominance of individual issues of fact in the context of the second stage of our certification analysis, after the parties have completed discovery.

      E.      The Archer Decision

      Gateway argues that we should deny conditional certification based on the reasoning in Archer v. Freedmont Mortgage Corporation, Civ. A. No. GLR-12-1099, 2013 WL 93320 (D. Md. Jan. 7, 2013), in which the district court denied a motion for conditional certification of a FLSA collective action brought by loan officers employed by Gateway in Maryland. The four named plaintiffs in Archer were employed as loan officers by Freedmont Mortgage Corporation, Gateway Funding Diversified Mortgage Services Limited Partnership (the Defendant in the instant action), Carl Delmont, and Jason Delmont (collectively, the "Archer defendants"). Archer, 2013 WL 93320, at *1. The plaintiff loan officers in Archer sold residential mortgage loans and were paid exclusively through commissions on the loans they sold. Id. They were required to work one day each week in the "[d]efendants' offices to field phone calls from customers seeking to learn more about [d]efendants' loans," but were otherwise free to work wherever they liked and decided for themselves how many hours to work each day. Id. They

"were expected to perform the majority of their jobs outside the office via face-to-face meetings with prospective clients." Id.  The Archer defendants did not keep track of the loan officers' time or supervise their activities.  Id.  The Archer plaintiffs claimed that they worked in defendants' offices for 40-50 hours each week, but were paid less than minimum wage or no wages at all during various time periods. Id. at *1-2.  The plaintiffs asserted claims for violation of §§ 206(a) and 207 of the FLSA and Maryland law.  Id.

The Archer court denied the plaintiffs' motion for conditional certification at the first stage of the two-stage certification analysis on the ground that the case would "require 'substantial individualized determinations for each class member'" to determine whether the potential plaintiffs were similarly situated, making the case unmanageable.  Id. at *3 (quoting Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010)) (additional citation omitted).  The Archer court explained that, because none of the parties to that action kept track of the loan officers' hours or where they worked, the court would be required to conduct "an examination of each potential class member's job duties, hours worked, place where he or she performed his or her work, level of supervision, whether he or she recorded his or her time, and other factors surrounding job scheduling and performance." Id. at *4.  The Archer court also denied the motion for conditional certification because the plaintiffs had not met their burden of demonstrating that all of the loan officers were wrongly classified as exempt. Id. at *5-6.

As we discussed above, we have concluded that the Plaintiffs in this case have met their burden of making a modest factual showing that Gateway had an unlawful practice of misclassifying its loan officers as exempt in order to unlawfully avoid paying them federally required minimum and overtime wages and that it utilized this practice in its offices nationwide. Moreover, as we also discussed above, the practice in this Circuit is to leave questions regarding

whether individual issues may predominate over common issues until the second stage of the certification process, when the parties have completed discovery and we can make our determination based on a full record.  Consequently, even though this case is similar to Archer in that both cases involve Gateway's loan officers, and there are no official records of the hours worked by the loan officers in either case, we are not persuaded that the Archer court was correct in deciding that the possibility that substantial individualized determinations will have to be made with respect to each potential member of the putative collective requires the denial of a first stage motion for conditional certification.

Gateway contends, however, that Archer is controlling and that we cannot grant the instant Motion because "Plaintiffs seek certification of the *same* collective action of the *same* Loan Officers on the *same* misclassification theory that Judge Russell found unsuitable for conditional certification in *Archer*."  (Def.'s Opposition to Pls.' Mot. at 9.)  Gateway asserts that Plaintiffs have not "offer[ed] any basis for this Court to revisit Judge Russell's decision" and contends that "it would be entirely inappropriate for this Court to allow a second bite at the same apple of conditional certification."  (Id. at 10-11.)  Gateway relies on In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 333 F.3d 763 (7th Cir. 2003), in which "the Seventh Circuit held that an earlier denial of class certification would be binding on all putative members of the class, whether or not named in the action, so long as they were adequately represented by the named litigants and class counsel."  Baker v. Microsoft Corp., 797 F.3d 607, 620 (9th Cir. 2015).

However, the Supreme Court abrogated In re Bridgestone/Firestone, Inc. in Smith v. Bayer Corp., 564 U.S. 299 (2011).  The defendant in Smith argued that members of a putative class should be bound by a prior decision denying class certification because, otherwise, "class counsel can repeatedly try to certify the same class by the simple expedient of changing the

named plaintiff in the caption of the complaint." Id. at 2381 (internal quotation omitted). The defendant further argued that, "in this world of serial relitigation of class certification . . . defendants would be forced in effect to buy litigation peace by settling." Id. (internal quotation and citation omitted). The Supreme Court acknowledged that permitting new groups of plaintiffs to seek certification may result in the "relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief." Id. Nonetheless, it rejected defendant's arguments, concluding that precluding plaintiffs from pursuing class certification "flies in the face of the rule against nonparty preclusion." Id. The Supreme Court determined that, while success by the plaintiffs in a single suit "could 'trum[p]' or 'subsum[e]' all prior losses . . . our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs. We have not thought that the right approach . . . lies in binding nonparties to a judgment." Id. (first two alterations in original) (quoting In re Bridgestone/Firestone, 333 F.3d at 766, 767).

Since the Supreme Court has rejected the reasoning of In re Bridgestone/Firestone, we consider the preclusive effect of Archer pursuant to federal common law. Granger v. Dethlefs, Civ. A. No. 10-6941, 2014 WL 2475979, at *2 (E.D. Pa. June 2, 2014) ("When reviewing the preclusive effect of a previous federal court action, [the district court applies] the federal common law principles of issue preclusion." (citing Peloro v. United States, 488 F.3d 163, 175 n.11 (3d Cir. 2007))). "Collateral estoppel, or issue preclusion, provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'"

Humphreys v. Budget Rent A Car Sys. Inc., Civ. A. No. 10-1302, 2013 WL 797439, at *4 (E.D. Pa. Mar. 4, 2013) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980); Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001)).   Under federal common law, issue preclusion only applies if "the party to be precluded . . . had a 'full and fair' opportunity to litigate the issue in the first action."   Peloro, 488 F.3d at 175 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 328, 332 (1979)).   He, "the part[ies] to be precluded," i.e., Plaintiffs Jeter and Rocha and the opt-in plaintiffs, were not among the plaintiffs who filed Archer.   See Archer, 2013 WL 93320, at *1 (listing the plaintiffs).   There is also no indication that Jeter, Rocha, or any of the individuals who have submitted consents to opt in as plaintiffs in this case also opted in as plaintiffs in Archer.   Moreover, since the putative collective was not certified in Archer, the Plaintiffs, opt-in plaintiffs and potential members of the putative collective in this action had no other opportunity to join the Archer litigation and thus could not fully and fairly litigate their claims in that action.   We conclude that Plaintiffs, the opt-in plaintiffs, and the potential members of the FLSA Collective in this case were not parties to Archer and thus did not have a full and fair opportunity to litigate the issue of whether the putative collective should have been conditionally certified in Archer.   We further conclude, accordingly, that Archer has no preclusive effect in this case.

## IV.   CONCLUSION

For the reasons stated above, we conclude that Plaintiffs have satisfied their burden for conditional certification of a FLSA collective, i.e., that they make a "modest factual showing" that the employees described in the Complaint as members of the proposed collective "can be provisionally categorized as similarly situated to the named Plaintiff[s]."   Symczyk, 656 F.3d at 192.   Accordingly, we grant the instant "Motion for Order Authorizing Notice to Similarly

Situated Persons Pursuant to 29 U.S.C. § 216(b)" with respect to the Plaintiffs' request for conditional certification of this case as a collective action under the FLSA.  The FLSA Collective shall be made up of the following:

> All People who worked as inside sales Loan Officers for Defendant, its subsidiaries, or affiliated companies at any time during the maximum limitations period who worked more than 40 hours in any week without receiving all overtime compensation required by federal law or wages over the required minimum level for every hour worked.

(See Compl. ¶ 17; Pls.' Mem. at 11.)

Plaintiffs also ask that we order Gateway to provide them with the names, mailing addresses, phone numbers, and social security numbers of all individuals Gateway employed who are potential members of the FLSA Collective defined above.  Plaintiffs further ask that we authorize them to disseminate the proposed Notice of Lawsuit attached to the instant Motion to the potential members of the FLSA Collective.  Having conditionally certified this as a collective action pursuant to § 216(b), we have the discretion "'to facilitate the sending of notice to potential class members.'"  Symczyk, 656 F.3d at 194 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)). Gateway, however, contends that certain information contained in the proposed Notice is unfair or inaccurate and also argues that Plaintiffs' proposed procedures for disseminating the Notice are overly broad.  The Supreme Court has instructed that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."  Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989).  Consequently, we believe that "disputes relating to the form and content of notice [and its dissemination] would be best resolved by the parties."  Hively v. Allis-Chalmers Energy, Inc., Civ. A. No. 13-106, 2013 WL 5936418, at *8 (W.D. Pa. Nov. 5, 2013).  Consequently, we "will order that the parties meet and confer regarding the contents and language of the notice, as well

28

as how the notice will be distributed."  Id.; see also Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 82 (D.N.J. 2014) (ordering the parties to a putative FLSA collective action to "meet and confer to devise a notice form that is fair and accurate and consistent with [the court's conditional certification of the putative collective]" and stating that the court would "resolve disputes between the parties as necessary and provide final approval of the notice upon submission by the parties").  An appropriate order follows.


BY THE COURT:


/s/ John R. Padova
_____

John R. Padova, J.